IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| CHRIS HANSEN, | Case No. 1:13-cv-01993-CL |
| Plaintiff, | |
| v. | **ORDER** |
| COMBINED TRANSPORT, INC., | |
| Defendant. | |

CLARKE, Magistrate Judge

Plaintiff Chris Hansen brings various employment and contract related claims against the defendant Combined Transport, Inc., ("Combined Transport") based on Oregon and Washington state law. This Court has jurisdiction under 28 U.S.C. § 1332. The case comes before the Court on the defendant's motions for relief, imposition of sanctions, and disqualification of counsel (#32, #53, #57), discovery motions (#36), and motion for leave to file an amended answer (#49). Also at issue is Plaintiff's motion to compel (#52). The motions are granted and denied as discussed below.

Page 1 – ORDER

## BACKGROUND

Plaintiff Chris Hansen began his employment with the defendant, Combined Transport, in June, 2011. At that time, the parties entered into a Letter of Agreement, stating the terms of Plaintiff's employment, as well as a Non-Solicitation Agreement. The Letter of Agreement provided, in part, that Combined Transport would pay Plaintiff "a salary of $5,800 per month with a bonus of no less than 1% on loads hauled by Combined [Transport]'s equipment and 2% on loads that are brokered." The Non-Solicitation Agreement provided, in part, that for two years after his employment terminated, Plaintiff would not solicit or do business with any customers that were "exclusive" customers of Combined Transport as of June, 2011.

Nearly two years later, in April, 2013, Plaintiff's employment with Combined Transport was terminated. The facts surrounding Plaintiff's termination are disputed by the parties. For instance, Plaintiff claims that Combined Transport's General Manager, Tony Keller, asked him what he felt he was owed for his bonuses, and what it would take to "get out of the Letter of Agreement." Plaintiff claims that he then asked Pam Hurley, another Combined Transport employee, to prepare reports for him, which he intended to use to calculate the bonuses owed. Ms. Hurley, currently still an employee at Combined Transport, submitted a declaration denying that such a conversation took place. Regardless, it is undisputed that certain documents belonging to Combined Transport were in Plaintiff's possession after he was terminated. It is also undisputed that Keller sent letters to Plaintiff and Plaintiff's attorneys requesting the return of all Combined Transport's equipment, records, notes, documents, and other proprietary items and information, as provided in the Letter of Agreement.

On April 12, 2013, Plaintiff met with his attorney, John Kreutzer, and turned over the various documents he had in his possession relating to Combined Transport. These documents

were place into a binder labelled "client documents." On April 18, Mr. Kreutzer received from Plaintiff a series of PDF's via email, which contained a 582-page report. The report contained a customer list, labelled by Combined Transport, "New Customer Report." Mr. Kreutzer states that due to his own error, and possibly that of his staff, this report was not placed into the client documents binder; instead a separate binder was created. The next day, April 19, 2013, Plaintiff's attorney sent Mr. Keller a letter, which stated, "Attached are Combined documents that were in Mr. Hansen's possession that are now being returned to you." The letter also indicated that Mr. Hansen himself did not retain copies or electronic files of those documents. However, it now appears that the 582-page New Customer Report was not included in the attachment to that letter. Mr. Kreutzer states that this was an unintentional omission by his office, probably due to the fact that the report was placed in a separate binder from the other client documents. There was no pending litigation at that time.

Besides the letters regarding the Combined Transport documents in Plaintiff's possession, the parties also exchanged correspondence regarding the bonuses due Plaintiff under the terms of the Letter of Agreement. After it became clear that the parties could not resolve their dispute over the bonuses, Plaintiff filed his Complaint in King County Superior Court in the state of Washington. The Complaint was served on the defendant on June 26, 2013, and the defendant then removed to federal court in the Western District of Washington (Dkt. #1). The case was transferred to this Court on a motion to change venue on November 8, 2013 (Dkt. #23).

In September, 2013, the defendant received Plaintiff's Rule 26 Initial Disclosures, which identified "Customer Lists" under Rule 26(a)(1)(A)(ii). The actual 582-page New Customer Report, however, was not produced to the defendant until January, 2014, although Plaintiff

counsel believed at the time that it had been produced back in April, 2013. Plaintiff claims he does not retain any copies of this report, and his attorneys retain one computer disk copy.

## DISCUSSION

I.  **Motions for relief, sanctions, disqualification of counsel (#32, 53, 57) are denied.**

The Plaintiff has submitted a declaration denying that he obtained the documents at issue in any improper way, and his attorneys have provided evidence that the New Customer Report was not immediately provided to defense counsel due to an unintentional error. Plaintiff counsel did disclose the report, the attorneys eventually produced it in its entirety, and they are willing to turn over the computer disk containing the only copy to defense counsel. Plaintiff counsel stated that the report was not examined, and it was not used in drafting Plaintiff's First Request for Production. Considering that portions of the report are likely discoverable in this litigation, and there is no evidence of bad faith or improper motive for not disclosing the document sooner, the defendant's motions regarding this report are denied. However, Plaintiff counsel shall return all copies to defense counsel, including the computer disk, immediately.

II. **Defendant's motion to compel (#36) is granted in part and denied in part.**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Under Rule 26, all such discovery is subject to restrictions imposed by the court to limit the frequency or extent of discovery if the court determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

a.  **Medical Records**

The defendants claim that they are entitled to Plaintiff's medical records because Plaintiff asserts damages for emotional distress based on his claims for wrongful discharge. Defendants argue that the damages claim puts Plaintiff's medical condition at issue, and therefore defendants are entitled to all medical records "of each and every physician, psychiatrist, psychologist, counselor, plastic surgeon, chiropractor, naturopath, and other practitioner of the healing arts who examined or treated plaintiff from January 1, 2003 to present."

Plaintiff claims these records are privileged and not subject to discovery. The cases relied upon by Plaintiff, however, apply federal law regarding physician- and psychologist-patient privilege. See, e.g., Thomas v. UPS Ground Freight, Inc., et al., Civ. No. 06–1281, slip op. at 3–6 (D.Or. Feb. 15, 2007); Kinnee v. Shack, Inc., Civ. No. 07-1463-AC, 2008 WL 1995458 (D. Or. May 6, 2008). In a civil case, "state law governs privilege" when state law supplies the rule of decision on a claim or defense. Fed. R. Evid. 501. Therefore, in this case, Washington and Oregon state law govern the privilege at issue.

Washington protects confidential physician-patient (RCW 5.60.060(4)) and psychologist-patient (RCW 18.83.110) communications. See Petersen v. State, 100 Wash.2d 421, 429, 671 P.2d 230 (1983). These statutory privileges were both enacted in derogation of the common law and are strictly construed. Id. The purpose behind the physician-patient privilege is to promote proper treatment by encouraging full disclosure and to protect the patient from embarrassment. Smith v. Orthopedics Int'l, Ltd., 170 Wash.2d 659, 667, 244 P.3d 939 (2010). However, "when a plaintiff puts his mental health at issue by alleging emotional distress, he waives his psychologist-patient privilege for relevant mental health records. The defendant is entitled to discover any records relevant to the plaintiff's emotional distress." Lodis v. Corbis Holdings,

Inc., 172 Wash. App. 835, 855, 292 P.3d 779, 791 (2013). Even if the plaintiff stipulates that he will not introduce any psychologist or expert testimony, the records may still be relevant to show causation and magnitude. Id.

Oregon also protects confidential physician-patient (ORS 40.235) and psychologist-patient (ORS 40.230) communications. Like in Washington, a plaintiff in Oregon waives his privilege by putting his psychological condition into question by claiming emotional distress damages. Baker v. English, 134 Or. App. 43, 46-47, 894 P.2d 505, 507 (1995) aff'd in part, rev'd in part, 324 Or. 585, 932 P.2d 57 (1997) ("There is no dispute that [plaintiff's] records, as they pertained to plaintiff himself, were not privileged, because plaintiff put his own psychological condition into question by claiming emotional distress damages.").

In this case, Plaintiff has alleged emotional distress damages; therefore he has waived his privilege under both Oregon and Washington state law. Therefore, any records of treatment, by any medical professional, for emotional or psychological matters shall be produced to the defendants under an appropriate protective order to be worked out by the parties. Plaintiff has not, however, put his physical health at issue in this case. Therefore he is not required to produce medical records not pertaining to his mental or emotional health.

### b. Earnings Statements

The Court finds that the Plaintiff's records of income and earnings statements from May, 2011 to present are discoverable and shall be produced to the defendants under an appropriate protective order to be worked out by the parties.

### III. Defendant's motion for leave to file Second Amended Answer (#49) is denied.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." This rule represents a "strong policy permitting

amendment." Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991). The liberality of the rule is qualified by the requirement that the amendment not cause undue prejudice to the opposing party, is not sought in bad faith, and is not futile. Green v. City of Tucson, 255 F.3d 1086, 1093 (9th Cir.2001). Thus, whether leave to amend should be granted is generally determined by considering the following: 1) undue delay; 2) bad faith; 3) futility of amendment; and 4) prejudice to the opposing party. Lockheed Martin v. Network Solutions Inc., 194 F.3d 980, 986 (9th Cir.1999).

Not all of the factors merit equal weight. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003) (per curiam). The consideration of prejudice to the opposing party carries the greatest weight, and is the "touchstone of the inquiry under Rule 15(a)." Id. at 1052. Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under rule 15(a) in favor of granting leave to amend. Id. Although delay is not a dispositive factor in the amendment analysis, it is relevant, Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990), especially when no reason is given for the delay. Swanson v. United States Forest Serv., 87 F.3d 339, 345 (9th Cir.1996). Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend. Morongo Band, 893 F.2d at 1079.

In this case, defendants move for leave to amend their answer for a second time based on the same assertions and arguments defendants made in their motions for sanctions and disqualification of counsel. That is, defendants contend that Plaintiff deliberately stole the New Customer Report and his attorneys intentionally did not disclose or produce it to the defendants. The revised and additional allegations in the Proposed Second Amended Answer assert new claims against the Plaintiff as well as his attorneys. The Court finds a substantial number of

these claims to be futile as well as prejudicial, as they would require Plaintiff to obtain new counsel even though the Court has found no evidence of counsel's bad faith or improper motive, as discussed above. Defendant's motion for leave to amend is denied at this time.

### IV.    Plaintiff's motion to compel (#52) is granted.

Plaintiff requests production of records of all loads hauled by Combined from June, 2011 to present. The defendants object, protesting that only loads hauled by Combined that were also brokered by Plaintiff are relevant to his claims; therefore discovery should be limited accordingly. Plaintiff insists that his contract guaranteed him a 2% bonus on "loads that are brokered" with no limitation as to the person who brokered them. While Plaintiff's interpretation of the contract language as to the 2% bonus may be a stretch, the documents requested are discoverable and shall be produced to Plaintiff under an appropriate protective order to be worked out by the parties.

### ORDER

1. Defendant's motion for relief (#32) is DENIED.
2. Defendant's motion to compel (#36) is GRANTED in part and DENIED in part.
3. Defendant's motion for leave (#49) is DENIED.
4. Plaintiff's motion to compel (#52) is GRANTED.
5. Defendant's motion for sanctions (#53) is DENIED.
6. Defendant's motion for disqualification of counsel (#57) is DENIED.

ORDERED and DATED this _8_ day of May, 2014.

MARK D. CLARKE
United States Magistrate Judge